Filed 4/30/26  P. v. Avram CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B332182 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA495360) |
| v. | |
| JOSHUA PETER AVRAM, a.k.a. Aphrodite Avram, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Judgment affirmed in part, and reversed and vacated in part; remanded with directions.

Nate Crowley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Steven D. Matthews, and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Aphrodite Avram[1] appeals her conviction for assault with a deadly weapon after a jury trial. As an aggravating factor, the jury found that the assault "involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness" within the meaning of rule 4.421(a)(1) of the California Rules of Court.[2] The jury also found that Avram personally inflicted great bodily injury on the victim within the meaning of Penal Code section 12022.7, subdivision (a).[3] Avram argues the trial court prejudicially erred by failing to instruct the jury on the elements of the aggravating factor, and by relying on other factors not found by the jury when imposing an upper term sentence. She further argues the court should have dismissed the section 12022.7 sentencing enhancement in the interests of justice due to her mitigating circumstances. Avram also requests we review the denial of her request for law enforcement records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

---

[1] Aphrodite Avram is a transgender woman whose name at birth was Joshua Peter Avram.

[2] Further rule references are to the California Rules of Court.

[3] Undesignated statutory references are to the Penal Code.

2

We affirm the judgment of conviction, but vacate Avram's sentence and remand for a new trial on the aggravating factors because it was prejudicial error for the court to impose an upper term sentence based on uninstructed and unproven aggravating factors.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Information and Pretrial Proceedings*

In May 2021, Avram was charged with one count of assault with a deadly weapon (§ 245, subd. (a)(1)).

After Avram's appointed counsel declared a doubt as to her mental competence, Avram was psychologically evaluated and diagnosed with unspecified schizophrenia spectrum disorder, chronic psychotic disorder, and delusional disorder. (See §§ 1368, subd. (b), 1369.) In October 2021, the trial court found Avram incompetent to stand trial, suspended the criminal proceedings, and ordered her committed for treatment with the Department of State Hospitals. (See § 1370.) In February 2023, the trial court found Avram had attained competence and reinstated criminal proceedings, based on a new psychological report and a certification of Avram's mental competency from the Department of State Hospitals. (See § 1372.)

In April 2023, Avram filed a *Pitchess* motion for discovery of law enforcement personnel files of the Los Angeles Police Department (LAPD) officers who responded to and investigated the assault. The court granted the motion and agreed to review the files for "complaints regarding credibility, dishonesty and false reports" by the responding officers. After review, the court found "no discoverable items" and denied Avram's motion.

3

The People filed an amended information in May 2023, newly alleging that Avram "personally inflict[ed] great bodily injury" upon the victim (§ 12022.7, subd. (a)) and that the offense "involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness" (rule 4.421(a)(1)).

B.    *The Jury Trial*

At trial, the People's evidence showed that around 3:00 p.m. on May 6, 2021, Avram stabbed John Doe in the abdomen with a knife in the vicinity of Hillhurst and Vermont Avenues in Los Angeles.  Eyewitnesses saw Avram approach Doe while "yelling" and "walking at an accelerated pace," stand over Doe on the ground, and stab Doe "more than once" with what appeared to be a "butcher knife" or "kitchen knife."  Avram left the scene immediately and was apprehended by LAPD officers shortly afterward.  Officers found a "large kitchen knife" with "fresh blood" in Avram's shoulder bag.

Witnesses reported Doe was "bleeding a lot" from "[t]he lower abdomen," "his stomach [was] cut wide open," his "intestines spilled out" and "he was holding his intestines with one hand."  Doe also had "multiple other . . . stab wounds," including "one on the back of the right arm, two on the front of the right arm, and . . . two on [his] back."  Doe was unidentified at trial, and he appeared to be homeless.  He was transported to the hospital for surgery to address his wounds.  Doe did not testify at trial.

Avram admitted stabbing Doe but testified that she acted in self-defense.  Avram explained that she was a transgender woman, and at the time of the offense, she was homeless.  Earlier

4

in the day, "around 10:30 a.m.," Avram was exiting a women's restroom in Griffith Park when she encountered Doe. Doe approached Avram as she washed her hands at a sink outside of the bathroom building and "threatened [her] very aggressively." According to Avram, Doe stated, "It's a tranny pedophile." Avram testified she "was immediately very wary" and "frightened." Doe continued, "How can I stop you from molesting more kids? Oh, I know, I'm going to shoot you." Doe told Avram "that he had a loaded gun in his backpack, and he said, 'I'm going to put a bullet in your skull.'" Avram described that "his tone, his demeanor was very angry, very aggressive, very threatening. I was very scared. I did not want to provoke him, but I was also very conscious of the fact that he could suddenly pull a gun out and shoot me." Avram testified she "did [her] best to keep an eye on him, and see if he reached into the backpack . . . I didn't speak to him. I didn't want to provoke him. He continued to accuse me of being a child molester." Doe then walked away from Avram toward Vermont Avenue.

Later that afternoon, Avram left Griffith Park and saw Doe again. Avram described that Doe began walking "slightly behind" her and in the same direction, and he "continu[ed] to threaten" Avram. According to Avram, Doe stated, "You want to hunt for little girls in bathrooms. Well, I'm going to hunt you back," and "[j]ust one bullet and your pedophile career is over." Avram crossed the street, retrieved a knife from her bag, and reapproached Doe, asking him to "please just leave me alone." According to Avram, Doe said, " 'Bullet in your skull, pedo,' and he began removing his backpack." Avram described that she unsheathed the knife, Doe "stumbled and fell back," and she "reached over with the knife," and "moved the knife horizontally"

5

across his "upper left chest." Doe "made a very angry noise" and "he reached for his backpack," so Avram "stabbed him once only in the stomach" and fled the scene.

The trial court instructed the jury on the elements of assault with a deadly weapon, the doctrine of lawful self-defense, and the definition of "great bodily injury" within the meaning of the section 12022.7, subdivision (a), sentencing allegation.[4] The court did not instruct on the aggravating factor allegation under rule 4.421(a)(1). Instead, the jury received the special verdict form directing it to determine "the aggravated factor that the above offense involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness within[] the meaning [of] California [] Rules Of Court 4.421(a)(1)." Avram did not object to the omission of the aggravating factor instruction.

The jury found Avram guilty as charged and found the sentencing enhancement and aggravating factor allegations true.

---

[4] As relevant here, the self-defense instruction (CALCRIM No. 3470) provided: "The defendant acted in lawful self-defense if: 1. The defendant reasonably believed that she was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; AND 3. The defendant used no more force than was reasonably necessary to defend against that danger."

The instruction on the section 12022.7, subdivision (a), enhancement provided, "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

C.    *Sentencing*

In her sentencing memorandum, Avram argued that under section 1170, subdivision (b)(6), she was entitled to a presumption of the low term of two years based on her "long-standing history of mental illness." Avram also identified other mitigating factors, including her lack of criminal history, her uncontradicted testimony that Doe harassed and provoked her, and her belief that she acted in self-defense. Avram further requested the court dismiss her sentencing enhancement under section 12022.7, subdivision (a), based on the mitigating factor that her offense was "connected to mental illness."

The People's memorandum asked the court to impose the upper term, arguing that mental illness did not warrant a presumptive low term and that the aggravating factors outweighed the mitigating factors. The People opposed Avram's request to dismiss the section 12022.7 sentencing enhancement because dismissal would endanger public safety.

At the sentencing hearing, Avram additionally argued the trial court should not impose "both the [great bodily injury] enhancement and the aggravating factor," because "the only thing the People alleged to the jury was the injury itself for both of those [allegations], and therefore it would be inappropriate for the court to enforce a punishment for both of those things, when it's the same act." The People contended it was appropriate to enforce both the enhancement and the aggravating factor because the rule 4.421 aggravating factor "also talks about the degree of cruelty and viciousness and callousness. So there are multiple things that the jury could have considered, in terms of how the crime occurred[,] in reaching that decision."

The trial court sentenced Avram to a total of seven years, comprised of the upper term of four years, plus three years on the section 12022.7, subdivision (a), enhancement. The court reasoned that the aggravating facts of the offense "outweigh[ed] the mental health concerns" and thus it would not impose the low term. The court further identified "severe public safety issues" outweighing Avram's lack of criminal history, including that the assault happened "in broad daylight, on a busy street" in "a residential area, a commercial area [with] lots of individuals around, and defendant is running around with a butcher knife, and attacks someone for simply yelling at [her] hours earlier." The court stated this was "clearly, an issue for all residents, and the public safety here, if it was a zero to 10 [scale], it would have to be a 10, because there's just nothing, in this court's opinion, that could assist the citizens of this county to be in a secure and safe environment if this person isn't in custody for the full amount of the period."

Avram timely appealed.

## DISCUSSION

A.    *Sixth Amendment Error Regarding Jury Determination of Aggravating Circumstances*

Avram argues the court prejudicially erred by omitting CALCRIM No. 3224 regarding the rule 4.421(a)(1) aggravating factor. As relevant here, CALCRIM No. 3224 reads:

> If you find the defendant guilty of the crime[s] charged . . . you must then decide whether the People have proved the additional allegation that the

8

crime . . . involved great violence, or great bodily harm, or threats of great bodily harm, or other acts revealing a high degree of cruelty, viciousness, or callousness. . . .

To prove this allegation, the People must prove that:

1.  During the commission of the crime, the defendant used great violence or inflicted great bodily harm, or threatened to inflict great bodily harm, or committed other acts showing a high degree of cruelty, viciousness, or callousness;

AND

2.  The type/level of violence, or bodily harm, or threat of bodily harm, or cruelty, viciousness, or callousness was distinctively worse than what was necessary to commit the crime.

For the crime to have been committed with great violence, or cruelty, or viciousness, or callousness, no one needs to actually have been injured by the defendant's act.  But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed the crime with great violence, or cruelty, or viciousness, or callousness.

Great bodily harm means significant or substantial

physical injury, as opposed to minor or moderate harm. . . .

Viciousness means dangerously aggressive or marked by violence or ferocity. Viciousness is not the same as violence. For example, some acts which may be described as vicious do not involve violence at all, but rather involve acts such as deceit and slander. On the other hand, many violent acts do not indicate viciousness, but instead show frustration, justifiable rage, or self-defense.

An act discloses cruelty when it demonstrates the deliberate infliction of physical or mental suffering.

An act discloses callousness when it demonstrates a lack of sympathy for the suffering of, or harm to, the victim.

You may not find the allegation true unless all of you agree that the People have proved at least one of the following: that the defendant used great violence, or inflicted great bodily harm, or threatened to inflict great bodily harm, or committed other acts showing a high degree of cruelty, viciousness, or callousness. However, you need not all agree on the acts or conduct that constitutes the use of great violence, or infliction of great bodily harm, or threat to inflict great bodily harm, or show a high degree of cruelty, viciousness, or callousness.

You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime. . . .

The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved.[5]

1. *Governing Law and Standard of Review*

The Sixth Amendment right to a jury trial and the Fourteenth Amendment guarantee of due process "entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 476-477 (*Apprendi*).) Where "enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' [citation], the Sixth Amendment requires that they be found by a jury." (*Ring v. Arizona* (2002) 536 U.S. 584, 609; see *Cunningham v. California* (2007) 549 U.S. 270, 288-289 (*Cunningham*) [under *Apprendi*, aggravating circumstances

---

[5] After the Legislature amended section 1170 to require a jury finding on aggravating circumstances, the Judicial Council implemented CALCRIM No. 3224 in March 2023, along with CALCRIM Nos. 3225 to 2351, "to provide guidance on the definitions and required findings for the listed aggravating circumstances." (*People v. Lynch* (2024) 16 Cal.5th 730, 748, fn. 6.) Avram's trial took place in June 2023.

supporting upper term sentence must be found by a jury].)

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense.  [Citation.]  It is, indeed, very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee." (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*), citing *Apprendi*, *supra*, 530 U.S. at p. 477.) Accordingly, "it is well settled that no objection is required to preserve a claim for appellate review that the jury instructions omitted an essential element of the charge." (*People v. Mil* (2012) 53 Cal.4th 400, 409 (*Mil*) [trial court erred by omitting "essential elements of a special circumstance allegation"].)

We review constitutional claims and claims of instructional error de novo.  (See *People v. Rivera* (2019) 7 Cal.5th 306, 326 [instructional error]; *In re Taylor* (2015) 60 Cal.4th 1019, 1035 [constitutional claims].)  We must consider the claim of instructional error " 'in the context of the instructions as a whole and the trial record.' " (*Rivera*, at p. 326; accord, *People v. Salazar* (2016) 63 Cal.4th 214, 248 [" ' "[t]he correctness of jury instructions is to be determined from the entire charge of the court" ' "].)

"[A]n instructional error that improperly describes or omits an element of an offense . . . generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution" (*People v. Flood* (1998) 18 Cal.4th 470, 502-503 (*Flood*)), unless the "instructional error or omission . . . amounts to the *total* deprivation of a jury trial" (*Merritt*, *supra*, 2 Cal.5th at p. 830). Rather, where the trial court fails to instruct on necessary elements, generally this error "is subject to harmless-error

12

analysis" under the test of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*), that is, "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Neder v. U.S.* (1999) 527 U.S. 1, 15 (*Neder*); accord, *Merritt*, at pp. 825-826, 831; *Mil*, *supra*, 53 Cal.4th at p. 409.) " '[O]verwhelming' " evidence, "other properly given jury instructions," or a defendant's concession of elements for which an instruction was omitted may render an error harmless. (*People v. Williams* (1997) 16 Cal.4th 635, 689, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; accord, *Merritt*, at p. 827 [if omitted "elements were uncontested and supported by overwhelming evidence, it would not necessarily follow that the trial was fundamentally unfair"]; *Flood*, at p. 504 [harmless error to omit instruction on element of crime "where the defendant concedes or admits that element"].)

   2.   *The Trial Court Erred by Not Instructing the Jury on the Rule 4.421(a)(1) Aggravating Factor*

Avram contends the trial court failed to instruct on all the elements of the rule 4.421(a)(1) aggravating factor, and this error was prejudicial, if not structural.

The People first contend that Avram forfeited her claim by failing to object to the omission or to request an instruction. The People also argue that this is "a discretionary sentencing matter that [Avram] had an incentive and a full opportunity to argue below." As stated, however, forfeiture does not bar Avram's claim because the trial court had a sua sponte duty to instruct on all essential elements of the charge. (See *Mil*, *supra*, 53 Cal.4th at p. 409; see also *People v. French* (2008) 43 Cal.4th 36, 46 ["a

13

'[d]efendant's failure to object . . . [does] not preclude his asserting on appeal that he was denied his constitutional right to a jury trial' "]; accord, *People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5.)  Further, the failure to instruct the jury on all essential elements is not a matter of discretion but raises a legal claim under the federal constitution subject to de novo review. (See *People v. Serrano* (2022) 77 Cal.App.5th 902, 908-909; *People v. Lua* (2017) 10 Cal.App.5th 1004, 1013.)

The People further argue that, as a whole, the jury was adequately instructed on the definition of great bodily injury within the meaning of rule 4.421(a)(1).  The record reflects that the jury received CALCRIM No. 3160 on the great bodily injury sentencing enhancement (§ 12022.7, subd. (a)), defining great bodily injury.  In closing arguments, the prosecution stated the definition of great bodily injury, but did not otherwise refer to or explain the aggravating factor allegation.

While CALCRIM No. 3160 and the prosecution's argument adequately covered the element of great bodily injury, Avram is correct that the jury was not instructed on other essential elements of the aggravating factor under rule 4.421(a)(1).  First, the jury was not instructed on the requirement that, to find the aggravating factor true, it must determine that Avram's conduct was "distinctively worse than what was necessary to commit the crime."  (CALCRIM No. 3224.)  This element was necessary to a true finding under rule 4.421(a)(1).  (See CALCRIM No. 3224 ["You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime."]; see also *People v. Sengpadychith* (2001) 26 Cal.4th 316, 320 (*Sengpadychith*) [constitutional error occurs

when trial court fails to instruct jury on a "necessary" element of a sentencing enhancement, meaning "a finding [that] is necessary to prove the . . . enhancement"]; *People v. Harvey* (1984) 163 Cal.App.3d 90, 116-117 ["In imposing the upper term . . . [under] rule 421(a)(1) [now rule 4.421(a)(1)] . . . the [factfinder] must convince itself that, when compared to other ways in which such a crime could be committed, the manner of *this crime's* commission indicated viciousness and callousness."]; accord, *People v. Webber* (1991) 228 Cal.App.3d 1146, 1169; *People v. Nevill* (1985) 167 Cal.App.3d 198, 206.)

Second, the jury instructions omitted any definition of "cruelty, viciousness, or callousness" within the meaning of rule 4.421(a)(1). This element of the aggravating factor may not be necessary in every case because "great bodily injury" alone may satisfy the requirements of rule 4.421(a)(1). (See *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1735 (*Gutierrez*) [aggravating factor satisfied by finding of "great bodily injury"]; accord, *People v. Castaneda* (1999) 75 Cal.App.4th 611, 614-615; *People v. Hill* (1994) 23 Cal.App.4th 1566, 1575; *People v. La Fargue* (1983) 147 Cal.App.3d 878, 898.)

But here, Avram was also subject to a sentencing enhancement for inflicting great bodily injury (see § 12022.7, subd. (a)), and the trial court could not aggravate Avram's sentence on the same factual basis. (See *People v. Scott* (1994) 9 Cal.4th 331, 350 [a court "generally cannot use a single fact both to aggravate the base term and to impose an enhancement"]; see also § 1170, subd. (b)(5) ["The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed."].) Thus, as the People acknowledged at sentencing, in Avram's case a jury finding of cruelty, viciousness, or

15

callousness was necessary to avoid dual punishment for inflicting "great bodily injury." (See *Gutierrez, supra*, 10 Cal.App.4th at p. 1735 [trial court "erred by using the fact the crime involved great bodily injury in imposing the upper term" where it also "imposed an enhancement for great bodily injury," but the error was harmless where the court further found "defendant's conduct also demonstrate[d] a high degree of cruelty, viciousness, and callousness"].) The court's failure to instruct the jury on the necessary element of "cruelty, viciousness, or callousness" was error.

"[I]t is th[e] court's duty to see to it that the jury are adequately informed on the law governing all elements of the case submitted to them to an extent necessary to enable them to perform their function in conformity with the applicable law." (*People v. Sanchez* (1950) 35 Cal.2d 522, 528; cf. *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 91 ["jurors can be (and we expect that they will be) given additional guidance and explanation, both in the meaning of qualitative terms [relevant to aggravating factors] . . . and in the meaning of the requirement that the aggravating circumstance makes the commission of the offense distinctively worse"].) Accordingly, the trial court erred by omitting jury instructions on necessary elements of the aggravating factor allegation. (See, e.g., *Mil, supra*, 53 Cal.4th at p. 409 [constitutional error to omit "essential elements of a special circumstance allegation"]; *Sengpadychith, supra*, 26 Cal.4th at p. 320 [same, as to sentencing enhancement].)

16

3. *The Trial Court Further Erred By Imposing an Upper Term Sentence Based on Untried Aggravating Facts[6]*

At sentencing, the trial court discussed public safety factors to justify Avram's upper-term sentence. The court stated the crime happened in "a residential area, a commercial area, [with] lots of individuals around, and defendant is running around with a butcher knife, and attacks someone for simply yelling at them hours earlier. . . . [W]hen you've got this kind of conduct happening in broad daylight, on a busy street, where one person was walking with a friend, the other person was taking her dogs out, there's people walking, and the city is living and thriving, and somebody is running towards another person in broad daylight stabbing him, close to death, . . . [it] is clearly, clearly, an issue for all residents, and the public safety here, if it was a zero to 10 [scale], it would have to be a 10."

As discussed, consistent with the Sixth Amendment, "[a]n upper term sentence may be imposed 'only' when circumstances in aggravation 'justify' that term, and 'only' when the facts underlying 'those' justifying circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt at a jury or court trial." (*People v. Lynch* (2024) 16 Cal.5th 730, 759 (*Lynch*).) Here, the court erred by imposing an upper term sentence based on facts not found by the jury or stipulated to by Avram, including that Avram used a knife, that the assault occurred in a busy public area, and that Avram's conduct endangered public safety. The court's reliance on these facts at sentencing suggests the court considered additional uncharged

---

[6] Although Avram did not raise this argument in her opening brief, this court requested supplemental briefing on the issue. (See Gov. Code, § 68081.)

17

and unproven aggravating circumstances to impose an upper term sentence.  (See, e.g., rules 4.421(a)(2) ["defendant was armed with or used a weapon at the time of the commission of the crime"], 4.421(b)(1) ["defendant has engaged in violent conduct that indicates a serious danger to society"].)  This was error.  (See *Cunningham*, *supra*, 549 U.S. at pp. 274-275 [Sixth Amendment right to a jury trial does not permit a judge to impose an upper-term sentence "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant"]; accord, *People v. Boyce* (2014) 59 Cal.4th 672, 728.)

The People concede that in imposing the upper term, the trial court "considered the facts that the offense occurred in a public area and created a threat to public safety."  But they contend "the court was permitted to consider additional aggravating factors not subject to reasonable dispute or challenged by defense counsel."  As the United States and California Supreme Courts have repeatedly held, however, imposition of a higher sentence based on any facts not found by a jury or specifically admitted by the defendant violates the Sixth Amendment.  (*Cunningham*, *supra*, 549 U.S. at pp. 274-275; *Lynch*, *supra*, 16 Cal.5th at p. 760.)

4.      *These Errors Were Prejudicial*

We conclude that the court's sentencing errors, taken together, were not harmless beyond a reasonable doubt under *Chapman*.[7]

---

[7]      Avram argues the omission of the aggravating factor instruction was structural error requiring automatic reversal. (But see *People v. Prieto* (2003) 30 Cal.4th 226, 256-257 [rejecting

18

If an element of the charge is removed from the jury's consideration, the error is harmless under *Chapman* if "it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*Merritt, supra,* 2 Cal.5th at p. 831; see *Flood, supra,* 18 Cal.4th at p. 504.) The reviewing court must " 'conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' [Citation.] On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' " (*Mil, supra,* 53 Cal.4th at p. 417, quoting *Neder, supra,* 527 U.S. at pp. 17, 19.) Instructional error may also be harmless if the jury's other findings "support[] the conclusion the error did not contribute to the verdict." (*Merritt,* at p. 832.)

Here, the jury expressly found that Avram caused great bodily injury, but it was not instructed on the meaning of and it did not find that (1) Avram's offense was "distinctively worse than an ordinary commission of the underlying crime" or (2) Avram displayed "a high degree of cruelty, viciousness, or

defendant's argument that omission of special circumstance elements was "reversible per se" and applying *Chapman* test for harmless error].) Alternatively, Avram contends the error was prejudicial under *Chapman.* We need not decide whether the error was structural because we conclude that cumulatively, the errors at sentencing were not "harmless beyond a reasonable doubt" under *Chapman.* (*Prieto,* at p. 257.)

19

callousness." (CALCRIM No. 3224.) The People argue that Avram "did not seriously contest the great bodily injury element at trial, hence there was no prejudice." They further argue that no reasonable jury would have found the rule 4.421(a)(1) aggravating factor untrue, given Avram's "horrific conduct."

In *Mil*, the trial court failed to instruct the jury on the mental state required for the felony-murder special-circumstance allegation (i.e., the defendant's intent to kill or reckless indifference to human life). (*Mil*, *supra*, 53 Cal.4th at p. 409.) The California Supreme Court determined this error was prejudicial because the defendant contested his mental state at trial, and the record " 'contain[ed] evidence that could rationally lead to a contrary finding with respect to the omitted element,' " specifically the defendant's statements to police that "he did not plan a robbery, he did not expect to use any force, he was unaware that [his accomplice] had a knife with her . . . , and he did not know that [the victim] had been stabbed." (*Id.* at pp. 417-419.) By contrast, in *Merritt*, the high court concluded the failure to instruct the jury on the elements of robbery was harmless under the circumstances. (*Merritt*, *supra*, 2 Cal.5th at p. 831.) In that case, the "attorneys for both parties accurately described the elements of robbery in front of the jury," and the defendant argued he was not the perpetrator but "expressly conceded that the perpetrator, whoever he was, committed robbery." (*Ibid.*) The evidence at trial, including surveillance footage of the perpetrator holding a gun and a demanding money, "did not allow [the defendant] to argue credibly that no robbery occurred." (*Id.* at p. 832.)

Applying these cases here, and in light of the trial court's reliance on other unproven aggravating facts, we conclude the

20

trial court's failure to instruct on the elements of the rule 4.421(a)(1) aggravating factor was not harmless.  As in *Mil*, Avram contested the omitted elements at trial (i.e., that Avram's offense was distinctively worse than an ordinary commission of the underlying crime and that she displayed a high degree of cruelty, viciousness, or callousness), and the record contains evidence that could rationally lead to a contrary finding as to these elements (as explained below).  (*Mil*, *supra*, 53 Cal.4th at p. 417.)  Further, unlike *Merritt*, here neither party described the elements of the aggravating factor to the jury in closing arguments, and although Avram conceded that she stabbed Doe, she did not concede any other elements of the charge.

Avram testified at trial that she acted in self-defense in response to Doe's transphobic and gender-based harassment and that Doe's repeated threats caused her to fear for her life.  This evidence was relevant to whether Avram showed viciousness or cruelty by attacking Doe in the context of their interaction, and whether she showed callousness by quickly leaving the scene of the stabbing, such that the record could have supported a finding in Avram's favor.  (See CALCRIM No. 3224 ["*Viciousness* is not the same as violence" and "many violent acts do not indicate viciousness, but instead show frustration, justifiable rage, or self-defense"]; accord, *People v. Reed* (1984) 157 Cal.App.3d 489, 492; cf. *People v. Sandoval* (2007) 41 Cal.4th 825, 840-841 (*Sandoval*) [concluding a reasonable jury could have found defendant did not "demonstrate[] callous behavior" where a codefendant testified the deadly confrontation was "a matter of self-defense" and "defendant's state of mind was hotly contested at trial"], superseded by statute as stated in *Lynch*, *supra*, 16 Cal.5th at p. 756.)  By the same token, the record permits a finding that

Avram's offense was not "distinctively worse" than other assaults based on Avram's testimony that she believed she was acting in self-defense, even if her conduct did not otherwise satisfy the requirements of the self-defense doctrine. (See *People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065 [self-defense for charge of assault requires "honest *and reasonable* belief" in imminent threat of bodily injury and permits only " 'the use of such force as is reasonable under the circumstances' "].)

Our conclusion is also supported by *Lynch*, *supra*, 16 Cal.5th 730. There, the California Supreme Court held that "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence . . . . If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing." (*Id.* at p. 768.) *Lynch* further stated that, " ' "[t]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence" ' " how " ' "the jury would have assessed the facts," ' " because " " [m]any of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts.' " " (*Id.* at pp. 775-776; accord, *Sandoval*, *supra*, (2007) 41 Cal.4th at p. 840.) The high court has noted that whether "the crimes involved a *high degree* of cruelty, viciousness, and callousness" is one such subjective standard. (*Lynch*, at p. 776;

22

see also *People v. Whitten* (1994) 22 Cal.App.4th 1761, 1767 ["examination of aggravating . . . factors necessarily involves subjective determinations based upon objectively demonstrated facts"].)

The People raise several arguments why the errors were not prejudicial. First, they contend that, had the jury been fully instructed, it would have found that Avram's offense was "distinctively worse than what was necessary to commit the crime," given the severity of Doe's injuries. (CALCRIM No. 3224.) Even if there was sufficient evidence for the jury to find Avram's conduct distinctively worse than necessary to commit the crime, Avram did not concede this issue nor was the evidence so overwhelming that we could find the omission of CALCRIM No. 3224 harmless beyond a reasonable doubt. (See *Mil*, *supra*, 53 Cal.4th at p. 418 [if elements of charge are omitted, even if the "evidence would be sufficient to sustain a finding [against the defendant] on appellate review, . . . our task in analyzing the prejudice from the instructional error is whether any rational fact finder could have come to the *opposite* conclusion"].)

The People also contend that any instructional error was harmless because the jury "would have found at least one additional aggravating factor to be true," specifically the factor mentioned in the probation report that Avram "has engaged in violent conduct that indicates a serious danger to society." (See rule 4.421(b).) The People further submit that at sentencing the trial court relied on "numerous" other aggravating facts, "including [Avram]'s great violence in rushing across the street to attack the unarmed victim with a butcher knife, the mere threat of great bodily harm which caused the victim to stumble and

23

fall . . . , and [Avram]'s cruelty and callousness in departing the scene without rendering or summoning aid." The People also assert the court was "entitled to rely on the additional aggravating factor outlined in the probation report, i.e., the defendant has engaged in violent conduct that indicates a serious danger to society," citing the court's finding at sentencing that Avram's conduct endangered "public safety." Finally, the People argue that the trial court "made an extensive record at sentencing, which reveals that it was not inclined to reduce [Avram's] sentence."

But as discussed above, the trial court's imposition of an upper term sentence violated the Sixth Amendment because it engaged in this additional factfinding, including that Avram used a knife, that the assault took place in a public area, and that her conduct endangered public safety. In essence, the People argue that the trial court's instructional error as to the rule 4.421(a)(1) aggravating circumstance was harmless because of the court's additional error in finding aggravating facts at sentencing. We cannot accept such an argument. We further note that, like the degree of cruelty and callousness of a given crime, whether a defendant's conduct "poses a *serious* danger to society" is a subjective determination difficult for a reviewing court to assess for harmlessness. (See *Lynch*, *supra*, 16 Cal.5th at pp. 775-776.)

We cannot conclude that the instructional error compounded with the factfinding errors were harmless. Under the circumstances and evidence present here, we cannot conclude beyond a reasonable doubt that a properly instructed jury would have found true both the rule 4.421(a)(1) aggravating circumstance and the additional aggravating facts found by the court at sentencing. (See *Mil*, *supra*, 53 Cal.4th at p. 417

24

[instructional error on elements of offense is prejudicial unless there is no "reasonable doubt that the jury verdict would have been the same absent the error"]; see also *Lynch*, *supra*, 16 Cal.5th at p. 775 [omission of a jury trial on aggravating facts is harmless, as to "*every* aggravating fact the trial court used to justify an upper term sentence," if " ' " '[n]o reasonable jury' " would have found in favor of the defendant . . . , given the jury's actual verdict and the state of the evidence' "].)

For these reasons, the court's failure to instruct on the elements of the rule 4.421(a)(1) aggravating factor and its reliance on untried aggravating facts constituted prejudicial error. (See *Lynch*, 16 Cal.5th at p. 776 ["Because we cannot find the omission of a jury trial harmless beyond a reasonable doubt as to *every* aggravating fact relied upon by the trial court to impose an upper term, [defendant's] sentence must be reversed."].) We remand to " ' "give the People an opportunity to retry" ' the aggravating facts." (*Ibid.*) On remand, "[t]he court may rely on any properly proven aggravating facts, including . . . facts necessarily found by the jury to support a verdict on underlying counts and enhancements" and it "retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence." (*Id.* at pp. 777-778.) Because we otherwise find prejudicial error, we need not address Avram's argument that the trial court also failed to instruct the jury that the prosecution must prove the aggravating factor beyond a reasonable doubt.

25

B.  *The Trial Court Did Not Abuse Its Discretion by Declining To Strike the Great Bodily Injury Enhancement Under Section 1385*

Avram next argues the court erred by declining to strike the section 12022.7, subdivision (a), great bodily injury enhancement under section 1385.

1.  *Governing Law and Standard of Review*

Section 1385, subdivision (c)(1), provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so."  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances [enumerated] are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2).)  As relevant here, mitigating circumstances include that "[t]he current offense is connected to mental illness."  (§ 1385, subd. (c)(2)(D).)

We review for abuse of discretion the trial court's decision that dismissing a sentencing enhancement would endanger public safety.  (See *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).)  The court's exercise of discretion " ' " 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' "

26

(*Mendoza*, at p. 298.) " '[A]n abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' " (*Gonzalez*, at p. 225; see *People v. Randolph* (2018) 28 Cal.App.5th 602, 614.) " 'The trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.' " (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637; see *People v. Garza* (2005) 35 Cal.4th 866, 881 ["on appeal a judgment is presumed correct, and a party attacking the judgment, or any part of it, must affirmatively demonstrate prejudicial error"].)

2.      *The Trial Court Did Not Abuse Its Discretion*

Avram argues the trial court abused its discretion by applying the wrong legal standard to its finding that dismissal of the enhancement would endanger public safety.  Avram asserts the court erroneously found that dismissal would not "assist the citizens to be in a secure and safe environment," instead of finding a "likelihood . . . [of] physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)  Avram contends that this " 'secure and safe' standard would capture almost every crime, including many low level offenses and even misdemeanors."

" 'The general rule is that a trial court is presumed to have been aware of and followed the applicable law.' [Citations.]  The presumption is overcome by an affirmative showing of error in the record." (*People v. Shiga* (2016) 6 Cal.App.5th 22, 40; see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

In the context of the trial court's full ruling, Avram has not affirmatively shown that the court misapplied or misunderstood the standard that dismissal of the enhancement would endanger public safety by causing a likelihood of physical injury or other serious danger to others. (See § 1385, subd. (c)(2).) At Avram's sentencing, the court recounted the circumstances of Avram's offense, noting it happened in "a residential area, a commercial area, [with] lots of individuals around, and defendant is running around with a butcher knife, and attacks someone for simply yelling at them hours earlier." The court stated it was "concerned about . . . public safety," "when you've got this kind of conduct happening in broad daylight, on a busy street" and "somebody is running towards another person in broad daylight stabbing him, close to death." For these reasons, the court found that the risk to public safety "would have to be a 10" on a zero to 10 scale.

Although the court also stated that "there's just nothing, in this court's opinion, that could assist the citizens of this county to be in a secure and safe environment if this person isn't in custody for the full amount of the period," the record otherwise reflects the court's awareness of the correct legal standard. Given the nature and location of Avram's offense, the court found serious public safety concerns "if [Avram] isn't in custody for the full amount of the period." (See *Mendoza*, *supra*, 88 Cal.App.5th at p. 299 [affirming court's decision not to dismiss enhancement under section 1385 "[g]iven the court's consideration of the circumstances of the crime and the court's determination that a long sentence was necessary for [defendant] to become rehabilitated"].) Contrary to Avram's assertion, the record does not demonstrate that the court applied an "improper lower standard" in finding a danger to public safety. The court instead

28

found that dismissal was not appropriate because Avram's conduct warranted public safety concerns at a level "10" out of ten. For these reasons, the trial court did not abuse its discretion by finding dismissal of Avram's enhancement would endanger public safety.

Avram further argues that the court gave only "minimal consideration" to her "mental health issues," even though section 1385 requires "great weight" to mitigating circumstances, including where "[t]he current offense is connected to mental illness." (§ 1385, subds. (c)(2), (c)(2)(D).) Avram asserts that the court "did not discuss the link between [her] psychotic, schizophrenic, delusional symptoms and the offense conduct *at all*," even though these symptoms were "serious" and "direct[ly] connect[ed] to the offense conduct." In Avram's view, the court thus failed to consider dismissal of the enhancement in light of the Legislature's intent to "alleviate prison overcrowding" through section 1385. Avram also contends the court failed to consider her "lack of criminal history, and prospects for rehabilitation with psychiatric treatment," although these circumstances are not enumerated by section 1385.

The record reflects the court reviewed Avram's sentencing memorandum, where "the mental health issues . . . [were] detailed clearly," as well as the "doctor's report" which detailed Avram's delusions of "reincarnation" and "past life issues." The court recognized Avram's mental illness as a mitigating factor and stated that this mitigating factor warranted a "mental health presumption of [the] low term, or even midterm." After "consider[ing] that thoroughly," the court determined the facts of the offense were "overwhelmingly egregious" and "outweigh[ed] the mental health concerns," and it further found that any

29

sentence less than the full term would endanger public safety. Accordingly, the court imposed the upper term and declined to dismiss Avram's section 12022.7, subdivision (a), enhancement.

The court's decision not to dismiss the enhancement despite the mitigating factor of mental illness was not an abuse of discretion. (See *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 [no abuse of discretion in declining to dismiss sentencing enhancement where "[n]othing in the record demonstrates the trial court failed to assign significant value" to the section 1385 mitigating factors]; *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1053 [same, where "the trial court considered all the mitigating circumstances related to defendant" and "gave great thought to whether to dismiss"]; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1099 [same, where court acknowledged mitigating factor "but determined that other factors were collectively weightier"]; see also *People v. Walker* (2024) 16 Cal.5th 1024, 1033 ["in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in [section 1385,] subdivision (c)(2)"].)

C.    *The Trial Court Did Not Abuse Its Discretion by Denying Avram's* Pitchess *Motion*

At Avram's request, we reviewed the trial court's decision to deny her *Pitchess* motion. When a defendant demonstrates good cause for discovery of law enforcement personnel information, the custodian of records must produce all potentially relevant documents, and the trial court shall examine the

information in camera and disclose relevant documents not otherwise protected by statute.  (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1227 (*Mooc*); see also Evid. Code, §§ 1043-1047.)  " ' "[T]rial courts are granted wide discretion when ruling on motions to discover police officer personnel records." ' [Citation.]  'On appeal, this court is required to review the "record of the documents examined by the trial court" and determine whether the trial court abused its discretion in refusing to disclose the contents of the officer's personnel records.' " (*People v. Nuno* (2024) 105 Cal.App.5th 1030, 1055-1056; accord, *People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.)  To "permit future appellate review," the trial court must "make a record of what documents it examined before ruling on the *Pitchess* motion."  (*Mooc*, at p. 1229.)  The court can "photocopy" the documents "and place them in a confidential file," "prepare a list of the documents it considered, or simply state for the record what documents it examined."  (*Ibid.*)

Because the sealed record in this appeal did not contain a record of the documents the trial court reviewed at the *Pitchess* hearing, on our own motion, we directed the trial court to augment the record with these documents.  (See *Mooc*, *supra*, 26 Cal.4th at p. 1231.)  Having received and reviewed these documents, we conclude the trial court did not abuse its discretion by determining there were no personnel documents relevant to Avram's request.  (See *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286.)

## DISPOSITION

The judgment of conviction is affirmed.  We reverse and vacate Avram's sentence to allow the People an opportunity to retry the aggravating factors and for resentencing in accordance with amended section 1170, subdivision (b), and any other applicable ameliorative legislation.

MARTINEZ, P. J.

We concur:

SEGAL, J.

STONE, J.

32